IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                 No.  CR-03-1658 MV

HARRY HOWEYA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Harry Howeya's Motion to Suppress Defendant's Statements **[Doc. No. 24]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED**.

Defendant Harry Howeya was arrested at his home on the Acoma Pueblo on May 22, 2003, following an investigation into allegations that he had sexually abused a minor.  Defendant claims that, at the time of his arrest, he requested the presence of Acoma Pueblo tribal officials (fiscales) and the Pueblo Governor but that his request was denied.  Defendant nevertheless cooperated with the authorities and was taken to the Albuquerque FBI office where he was questioned by FBI Agent Travis H. Witt and BIA Investigator Augustine D. Abeita.  Defendant alleges that he was not given *Miranda* warnings at the time of his arrest or when the interrogation began at the FBI office.  The interrogation lasted from approximately 8:30 a.m. to 1:00 p.m. Although Defendant denied the allegations against him during the first several hours, he later changed his position and admitted to the charges.  Defendant contends his confession is constitutionally infirm because it was obtained not only in violation of *Miranda*, but also in

disregard for his right to counsel and through police coercion. Accordingly, Defendant seeks suppression of his post-arrest oral and written statements, as well as any evidence found as a fruit of those admissions. For the reasons stated herein, Defendant's motion will be denied.

### *Miranda* claim

Defendant argues he was not read his *Miranda* rights until several hours after his arrest, after he had confessed and written a letter apologizing to the victim. However, at the suppression hearing, the Government presented the Court with a *Miranda* waiver form signed by Defendant that indicated it had been completed at 8:43 a.m on the day of the arrest. Additionally, Agent Abeita testified that Defendant was informed of his *Miranda* rights at the Albuquerque FBI office at that time and that at no point did Defendant ask any questions about the waiver or about his rights. (Trans. at 18-19.) Based on the evidence and testimony presented by the Government, the Court finds that Defendant was properly advised of his *Miranda* rights.

### Right to Counsel

Defendant testified that he requested a lawyer twice after his arrest: once near the start of the interrogation, after he had been presented with a document outlining the allegations against him, and again after he had confessed. Defendant stated he was not provided counsel either time and that the officers continued to interrogate him. Yet, Agent Abeita testified that Defendant never asked for an attorney during the interrogation and that if he had, the officers would have terminated their questioning. (Trans. at 20.) Having weighed the varying accounts of the day and the apparent credibility of the witnesses, the Court finds the evidence insufficient to support Defendant's claim that his right to counsel was violated.

**Voluntariness of confession**

Lastly, Defendant contends his confession was involuntary because (1) he was denied food and drink during the interrogation, (2) he was not permitted to take his daily medications, (3) he has only limited proficiency in English, and (4) Agent Abeita threatened him until he confessed.

Regardless of whether *Miranda* warnings are given to a suspect, a confession will be admissible only if it was made voluntarily. There is no hard and fast test used to evaluate the voluntariness of a confession; rather, courts must look to the totality of the circumstances and determine whether the statement was "the product of an essentially free and unconstrained choice." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The Tenth Circuit has stated that courts should consider, among other factors,"'the crucial element of police coercion,' 'the length of the interrogation' and 'its continuity,' 'the defendant's maturity,' 'education,' 'physical condition,' and 'mental health,' and 'the failure of the police to advise the defendant of his rights to remain silent and to have counsel present during the custodial interrogation.'" *Trice v. Ward*, 196 F.3d 1151, 1170 (10th Cir. 1999) (quoting *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)), *cert. denied sub nom.*, *Trice v. Gibson*, 531 U.S. 835 (2000).

Significantly, determining whether there was any *police* coercion lies at the heart of the voluntariness inquiry. "A defendant's confession is involuntary if the government's conduct causes the defendant's will to be overborne and 'his capacity for self-determination critically impaired.'" *United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)), *cert. denied,* 520 U.S. 1213 (1997). Having considered the evidence within this framework, the Court finds that the conditions surrounding the interrogation did not rise to this level.

Defendant's testimony that he was not given food or drink during the interrogation is somewhat misleading. Although Defendant initially stated he was not given anything during the interrogation (Trans. at 70), he later clarified that he *was* offered snacks and a drink, but only near the end of the questioning (Trans. at 110). Notably, Defendant himself conceded that he never asked for any food or beverage prior to that time. (Trans. at 110.) While Agent Abeita could not recall whether Defendant made any such request, he explained that as lunch time approached, Defendant was offered and given some crackers and a beverage. (Trans. at 22, 110.) While Defendant testified that he needs to eat small meals or snacks throughout the day because he is diabetic, he did not convey such information to the interrogating officers. (Trans. at 37-38.) Moreover, neither his own testimony nor that of Agent Abeita suggests that the lack of food in the morning impaired his ability to continue the interrogation or otherwise caused him to make statements against his will.

With regard to his claim about the denial of medication, Defendant first testified that he asked for his medication "[j]ust that morning," around the time of the arrest. (Trans. at 74.) However, later Defendant stated he had asked to take his medication both in the morning and during the interrogation, and that his requests were denied both times. (Trans. at 109-110.) Agent Abeita testified that, even if Defendant did ask for his medication when he was arrested, Agent Abeita never heard any such request. (Trans. at 34.) Agent Abeita further stated that while it was true that Defendant was not allowed to carry any medications with him while being transported to the FBI office in Albuquerque, Defendant never complained of any chest pain or asked for any medicine during the interrogation. (Trans. at 22, 30.) In light of the testimony

presented, the Court finds that the officers did not affirmatively withhold, deny or otherwise prevent Defendant from taking medication.

As for Defendant's ability to communicate in English, Defendant testified that while he speaks both Keres and English, he is more comfortable in Keres and that Keres is his first language. (Trans. at 53.) While Defendant clearly misunderstood some phrases or words used by counsel during the suppression hearing, he appeared fairly fluent in the English language. Agent Abeita testified that he has had experience questioning people whose primary language is not English and that he has been trained to pay attention to whether an individual is having difficulty communicating or comprehending during an interrogation. (Trans. at 19.) Agent Abeita further stated that Defendant "did not appear to have any look of confusion or bewilderment about anything that was being discussed" during the interrogation (Trans. at 43), and that he found no other reason to believe that Defendant was in need of language assistance (Trans. at 19.) In addition, Agent Abeita stated that Defendant "never stopped us at any time during the interview, and said, 'I don't understand what you're talking about." (Trans. at 43.) Although Defendant states that his limited language skills added to his general confusion and stress during the interview, he did not provide any testimony about specific instances where he was confused or failed to follow what was being asked or said to him by the agents. Without evidence sufficient to counter the agent's testimony and based on the Court's own observations of Defendant's communication skills, Defendant's contention that a language barrier contributed to the involuntariness of his confession is without merit.

Finally, Defendant testified that Agent Abeita threatened him by stating that if Defendant did not confess, he would be sent to prison where he would abused for having sexually abused a

child, but that if he did admit to the charges, he would be released.  However, Agent Abeita testified that neither he nor Agent Witt made any threats or promises to Defendant.  Defendant also contends he felt "badgered" and "scared" because Witt had been raising his voice and speaking sternly to him.  However, when asked why he confessed to the charges if he was in fact innocent, Defendant explained that the interrogation process was causing him great stress and that he wanted to get out of the interrogation room.  Since the agents did not believe his claims of innocence, Defendant thought they would release him if he simply lied and signed a confession.  (Trans. at 74-77.)  On cross-examination, Defendant was asked whether he thought the agents wanted him to lie.  Defendant replied that he did not and that he had come up with the idea of confessing falsely entirely on his own.  (Trans. at 92-95.)  Based on this testimony alone, the Court finds it difficult to say that any pressure or "coercion" felt by Defendant was a result of the officers' conduct or statements.  As Defendant himself stated, he made the decision to confess entirely on his own, as a result of his personal desire to terminate the questioning, not because the interrogating officers were pressuring him to do so.

**IT IS THEREFORE ORDERED** that Defendant Harry Howeya's Motion to Suppress Defendant's Statements **[Doc. No. 24]** is hereby **DENIED**.

Dated this 4th day of June, 2004.

MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Marron Lee
Fred Smith

Attorney for Defendant:

Margaret Katze
Benjamin Gonzales